**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**SUSAN MARIE BENNETT,**

        **Plaintiff,**       **22-CV-882Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## DECISION AND ORDER

    As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #12.

## BACKGROUND

    Plaintiff applied for disability and supplemental security income ("SSI"),

benefits with the Social Security Administration ("SSA"), on April 6, 2017, alleging

disability beginning March 15, 2015, at the age of 42, due to depression, anxiety,

bipolar disorder, diabetes, asthma, hypertension, alcoholism, and obesity. Dkt. #6,

p.292.

Following an unfavorable decision by Administrative Law Judge ("ALJ"), John Loughlin dated October 29, 2019 (Dkt. #6, pp.28-41), the Appeals Council denied review on November 20, 2020. Dkt. #6, p.9. Plaintiff filed an action in this Court on January 19, 2021. 21-CV-86 at Dkt. #1. By Stipulation and Order entered August 16, 2021, the matter was remanded to the Commissioner for further proceedings. 21-CV-86 at Dkt. #8. In its Order remanding the case to an ALJ, the Appeals Council directed further consideration of the opinion of plaintiff's treating counselor, Christina King, M.S.W. Dkt. #7, p.268.

On June 22, 2022, plaintiff appeared with counsel and testified, along with an impartial medical expert, Dr. Chukwuemeka Efobi, and an impartial vocational expert ("VE"), Judith Harper, at an administrative hearing conducted by online video before ALJ Linda Crovella. Dkt. #7, pp.151-195.

Dr.Efobi testified that he had reviewed the medical evidence and opined that plaintiff's medically determinable impairments included unspecified depressive disorder and generalized anxiety, as well as a rule-out for substance induced anxiety disorder, and marijuana and cocaine use disorder in remission. Dkt. #7, pp.159-160. When asked if he had an opinion as to whether plaintiff's medical impairments meet or equal any listing, Dr. Efobi testified:

> So the exhibits that I found most useful include 1F, 2F, 4, 5, 9, 12, 13, 18, 19, 30, 31, 33, and 37, and 38F. And what the records show is that the claimant has had issues with anxiety and depression over the periods. She's also had chronic alcohol use disorder. It appears that alcohol use has

-2-

been significant over the periods. The weeks the alcohol use
come into factor, she would meet the 12.04 and maybe
12.06. But without the alcohol use, she would not meet or
equal any of these listings.

Dkt. #7, p.161.


Dr. Efobi opined that with alcohol use, plaintiff would have moderate to
marked limitations in understanding, remembering or applying information for simple
and complex tasks; marked limitations for interacting with others; marked limitations for
concentration and pace; and moderate limitations for managing oneself. Dkt. #7,
pp.162-163. Without alcohol use, Dr. Efobi opined that plaintiff would have mild to
moderate limitations in understanding, remembering or applying information for simple
and complex tasks; moderate limitations for interacting with others, which he attributed
more to plaintiff's social anxiety; mild limitations for concentration and pace; and mild
limitations for managing oneself. Dkt. #7, p.163. More specifically, Dr. Efobi opined that,
absent alcohol use, plaintiff would had mild limitations:

- understanding, remembering and carrying out simple instructions;

- making judgments on simple work-related decisions;

- responding appropriately to usual work situations and changes in a
  routine setting;

and moderate limitations:

- interacting appropriately with the public;

- interacting appropriately with supervisors; and

- interacting appropriately with coworkers.

Dkt. #7, p.164. He also considered plaintiff's limitations to be mild with respect to her

ability to concentrate, persist or maintain pace and ability to adapt and manage oneself. Dkt. #7, p.164. Dr. Efobi explained:

> What I did was to include a record in a chronological order, so I have a timeline. And so, I base that on the sobriety periods and the periods of use and that clearly showed that the claimant did well when she was sober. And when she was actively using, she had [the] most severe symptoms and limitations.

Dkt. #7, p.164. Dr. Efobi opined that plaintiff should not be absent any more than the average worker so long as she maintained sobriety. Dkt. #7, p.167.

Plaintiff testified that her relapses are typically triggered by anxiety and nervousness. Dkt. #7, p.168. She explained that her bipolar disorder takes a toll and changes her attitude towards people and daily activities. Dkt. #7, p.169. Plaintiff testified that she last used alcohol at her daughter's gender reveal party, which included 30-40 people, within the past month. Dkt. #7, pp.172-173. She explained that she did not do well with the crowd and had to leave the party for a while. Dkt. #7, p.173. Plaintiff testified that she struggles with hygiene and household chores, and mentioned that she was looking at notes because she struggles with memory and can't remember anything. Dkt. #7, p.169. Plaintiff has a restoration society counselor that she sees twice a month to help her deal with daily activities; he prints out plans for her. Dkt. #7, p.169. She also has a care coordinator to assist her with scheduling doctor's appointments and transportation and responding to paperwork. Dkt. #7, pp.170-171 & 182. She testified that the pharmacy packages her medication for her. Dkt. #7, pp.170-171. Her aunt takes her grocery shopping probably twice a month. Dkt. #7, p.176. Her depression affects her ability to get out of bed and her interest in doing things, including helping her

mother. Dkt. #7, p.179. She becomes shaky and sweats from anxiety almost every day. Dkt. #7, pp.180-181. She was very anxious about this hearing. Dkt. #7, p.181.

When asked to assume an individual with plaintiff's age, education and past work experience as a Nurse Aid, who was capable of light exertional activity and could frequently stoop, kneel, crouch and crawl; occasionally be exposed to unprotected heights, moving machinery, fumes, odors, dusts, gases, or other pulmonary irritants, could not climb ladders, ropes or scaffolds and could have occasional interaction with coworkers and the public as well as occasional changes in a routine work setting, and could understand, remember, and perform simple, routine tasks for two hours at a time, with a standard break thereafter during the course of an eight hour day, the VE testified that such an individual could work in entry-level, light, unskilled positions such as marker, laundry folder, or office helper. Dkt. #7, pp.188-190. When asked if such an individual would be able to maintain employment if the individual was unable to interact with supervisors more than occasionally or required advance warning before such interaction, the VE responded negatively. Dkt. #7, p.193. The VE further opined that if such individual was off task more than 10% of the work day or absent more than once or twice a month, that individual would be unemployable. Dkt. #7, p.190.

The ALJ rendered a decision that plaintiff was not disabled on July 20, 2022. Dkt. #7, pp.125-141. Plaintiff commenced this action seeking review of the Commissioner's final decision on November 16, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related

-6-

activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that she could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the date of her application on March 15, 2015; (2) plaintiff's lumbar spondylosis, asthma, alcohol use disorder, cannabis use disorder, history of cocaine use disorder, bipolar disorder, major depressive disorder, and generalized anxiety disorder constituted severe impairments; (3) plaintiff's impairments met the listing for depressive and bipolar disorders when substance use was including, but not if substance use stopped, so that plaintiff would not equal any listing in the absence of substance use; (4) in the absence of substance use, plaintiff retained the RFC to perform light work but could not climb ladders, ropes or scaffolds, stoop, kneel, crouch and crawl more than occasionally, tolerate more than occasional exposure to dust, odors, fumes, gases and other pulmonary irritants, could understand, remember, and carry out simple instructions, perform simple tasks for about two hour at a time, after

which she required a standard break in order to complete an eight hour day, make simple work-related decisions, respond to occasional changes in a routine work setting and occasionally interact with co-workers and the public; and (5) plaintiff was unable to perform her past relevant work as a nurse aid, but was capable of working as a marker, laundry folder, or office helper, each of which are light exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.128-141.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the

medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec.*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

Plaintiff argues that the ALJ failed to adequately reconcile Dr. Efobi's opinion that plaintiff would have moderate limitations interacting with supervisors, which was consequential given testimony from the VE that such limitations could preclude work in the national economy. Dkt. #8-1, pp.15-18. Plaintiff also challenges the ALJ's reliance upon Dr. Efobi's opinion regarding plaintiff's capacity during periods of sobriety given that she continued intensive psychiatric treatment and received electroconvulsive shock therapy during one such period in 2021. Dkt. #18-1, pp.18-21. Similarly, plaintiff notes

that she continued to have serious psychiatric symptoms and take numerous psychiatric medications even during long periods of sobriety. Dkt. #18-1, p.21. Finally, plaintiff argues that because treatment records link her anxiety to her drinking, her substance abuse cannot be deemed material. Dkt. #8-1, p.22.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence and that the ALJ properly relied upon the testimony of a medical expert who opined that, absent alcohol use, plaintiff would be capable of work requiring only simple tasks and occasional interaction with coworkers and the public. Dkt. #9-1, p.15. Given that the ALJ limited plaintiff to work requiring no more than simple instructions, the Commissioner argues that the ALJ's limitation to no more than occasional interaction with coworkers and the public was sufficient. Dkt. #9-1, p.20. The Commissioner also argues that other opinion evidence also supported a determination that plaintiff was capable of substantial gainful employment absent alcohol use and that the ALJ properly concluded that these opinions were more persuasive than the assessment completed by plaintiff's mental health counselor. Dkt. #9-1, pp.17-18 & 24-27. Finally, the Commissioner argues that the ALJ's very restrictive RFC determination accounts for plaintiff's significant limitations even without alcohol use. Dkt. #9-1, pp.27-29.

The Court agrees that, having found the opinion of the impartial medical expert persuasive, it was error for the ALJ to fail to incorporate his moderate limitation regarding plaintiff's ability to interact with supervisors into the plaintiff's RFC or to

explain his rationale for failing to do so. *See Crystal G. v. Comm'r of Soc. Sec.*, 21-CV-122, 2023 WL 3821104, at *3 (W.D.N.Y. June 5, 2023) (without an explanation of some sort, omitting an important limitation in an opinion the ALJ found persuasive, *to wit*, plaintiff's ability to accept criticism or interact with a supervisor, leaves the Court unable to perform meaningful review); *See also, Rucker v. Kijakazi*, 48 F.4th 86, 91-92 (2d Cir. 2022) (RFC without limitation for plaintiff's ability to interact with supervisors does not account for moderate difficulties accepting instructions and responding appropriately to criticism from supervisors). Especially given the evidence of record pertaining to plaintiff's significant symptoms of anxiety, which persisted independent of plaintiff's use of alcohol, remand is warranted for the ALJ to clarify his reasoning.

In addition, the Court agrees with plaintiff that Dr. Efobi's testimony failed to provide a sufficient basis for his conclusions with respect to his assessment of plaintiff's mental limitations absent alcohol use. Plaintiff continued to experience serious psychiatric symptoms and receive significant mental health treatment, including multiple hospitalizations, numerous psychotropic medications, electroconvulsive therapy and continued counseling and other supports despite prolonged periods of reported sobriety and treatment notes suggesting plaintiff's anxiety as triggering of her alcohol use. "When it is not possible to separate mental restrictions and limitations imposed by the [Drug Addition or Alcoholism] and the various mental disorder shown by the evidence, a finding of 'not material' would be appropriate." *Frankhauser v. Barnhart*, 403 F. Supp.2d 261, 274 (W.D.N.Y. 2005); *See also, Williams v. Colvin*, 13-CV-1186, 2016 WL 1553443, at *1 (W.D.N.Y. April 18, 2016) ("where limitations associated with

substance abuse cannot be parsed out from mental health limitations, substance abuse cannot be held material to a finding of disability."). Accordingly, remand is necessary for further analysis regarding this issue as well.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:  Buffalo, New York**
**September 30, 2025**

 s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**